1
2
3
4
                    **UNITED STATES DISTRICT COURT**
                        **DISTRICT OF NEVADA**
5                          **RENO, NEVADA**
6
7
JOHN CARSTARPHEN, an individual,   )        3:07-cv-00542-ECR-RAM
8                                   )
        Plaintiff,                  )
9                                   )
vs.                                 )        **Order**
10                                  )
RICHARD MILSNER, an individual     )
11 and DOES 1 through 10, inclusive.)
                                    )
12      Defendant.                  )
                                    )
13 _____ )
14
       This case involves claims of breach of fiduciary duty and self-
15
dealing brought by a minority shareholder against the majority
16
shareholder of a corporation.  Plaintiff John Carstarphen
17
("Plaintiff" or "Carstarphen") alleges that Defendant Richard
18
Milsner ("Defendant" or "Milsner"), a director of American
19
Medflight, Inc. ("AMF"), breached his fiduciary duties in relation
20
to certain transactions involving AMF stock, as well as certain
21
business dealings between AMF and another company, Reno Flying
22
Service, Inc. ("RFS"), of which Milsner is majority shareholder.
23
       Now before the Court are Carstarphen's Motion to Amend
24
Complaint (#126), Carstarphen's Motion for Summary Judgment on the
25
Counterclaims (#128), and Milsner's Motion for Summary Judgment
26
(#131).
27
       The motions are ripe, and we now rule on them.
28

# I. Background

Plaintiff Carstarphen has been the owner of a one-third share of AMF's issued stock since the company's founding in 1993. (First Am. Compl. ¶ 6 (#4).)  In 1993, Defendant Milsner also owned a one-third share in the company, with the remaining one-third share owned by John Dawson ("Dawson"), who is not a party to this lawsuit. (Id.)  Since 1993, Carstarphen, Milsner, and Dawson have comprised AMF's three-person Board of Directors. (Id.)  AMF has an Employee Stock Option Plan ("AMF ESOP"), the trustees of which are Milsner and Dawson. (Id.)

Milsner is the owner of ninety six and one-quarter percent of RFS, which was incorporated in 1991. (Id. ¶ 7.)  Dawson owns the remaining shares of RFS. (Id.)  In 1998, Dawson's one-third share of AMF stock was sold to RFS. (Id. ¶ 14.)  Thus, Milsner controlled two-thirds of American Medflight stock, one-third individually and one-third through his controlling interest in RFS. (Id.)

In 2005, AMF ESOP purchased both the one-third share of AMF owned by Milsner individually and the one-third share of AMF owned by RFS at a price of $2310 per share. (Id. ¶ 16.)  Carstarphen was invited to sell his one-third share to AMF ESOP at the same price, but allegedly only on the condition that Carstarphen dismiss certain other litigation he had pending in Nevada state court against Milsner and Dawson, among others. (Id. ¶ 15.)  Carstarphen declined. (Id.)

Plaintiff filed suit in this Court on November 13, 2007 (#1). Plaintiff's first claim for relief, alleging "breach of fiduciary duty and self dealing," arises out of these 2005 transactions

2

involving the sale of AMF stock to AMF ESOP.  At the time of the purchase of Milsner's and RFS's shares in AMF, AMF ESOP did not have sufficient cash to pay the purchase price immediately.  (Id.)  The balance of the purchase price was financed via a promissory note. (Id.)  The promissory note appeared on AMF's financial statements as a $3.4 million liability.  (Id. ¶ 17.)  With this liability, Carstarphen's shares were allegedly devalued from a market value of $2310 per share to approximately $400 per share, a loss of over $1.5 million in value.  (Id. ¶ 17.)  He argues that Milsner's role in implementing these transactions, which resulted in a loss for Carstarphen and a personal gain for Milsner, amounts to a breach of his fiduciary duties. (Id. ¶ 19-20.)

Plaintiff's second claim for relief, also styled as a claim for "breach of fiduciary duty and self dealing," arises out of certain business dealings between AMF and RFS, which he alleges constitute breaches of Milsner's fiduciary duties.  (Id. ¶ 23.)  Specifically, Carstarphen objects to three categories of actions taken by AMF under the control of Milsner: (1) payment of a monthly "consulting fee" to RFS, (2) leasing aircraft from RFS instead of purchasing aircraft for AMF, and (3) using RFS for repair of AMF airplanes instead of hiring in-house maintenance personnel.  (Id.) Carstarphen alleges that each of these actions is taken for the benefit of RFS and Milsner as majority shareholder of RFS, in breach of Milsner's fiduciary duties to AMF and to Carstarphen as a minority shareholder of AMF.  (Id.)

Milsner has denied Carstarphen's allegations and asserted a number of counterclaims.[1]  (Answer (#35).)  Milsner's counterclaims consist of the following claims for relief: (1) Intentional Interference with Contractual Relations; (2) Breach of Fiduciary Duty; (3) Intentional Interference with Prospective Economic Advantage; (4) Breach of Covenant of Good Faith and Fair Dealing — Both Contractual and Tortious;(5) Negligence; and (6) Attorney's Fees.

On June 17, 2010, Carstarphen filed a Motion to Amend Complaint (#126).  On July 6, 2010, Milsner opposed (#133) the Motion to Amend Complaint (#126).  On July 12, 2010, Carstarphen replied (#134).

On June 28, 2010, Carstarphen filed a Motion for Summary Judgment on Milsner's Counterclaims (#128).  On August 2, 2010, Milsner opposed (#138).  On August 19, 2010, Carstarphen filed his reply (#148).

On July 6, 2010, Milsner filed his Motion for Summary Judgment (#131).  On August 6, 2010, Carstarphen opposed (#140).  On August 30, 2010, Milsner replied (#151).

On November 15, 2010, Milsner filed a Notice of Bankruptcy (#152).  On February 24, 2011, Carstarphen filed a Notice of Limited Relief from Bankruptcy Stay (#153) regarding the pending motions for summary judgment (##128, 131).  On May 25, 2011, we filed a Minute Order (#154) noting that the bankruptcy stay still applies to the Motion to Amend (#126).  On July 25, 2011, Carstarphen filed a

---

[1] Milsner also asserted claims against third parties, who have since been voluntarily dismissed from the case.

4

Notice of Limited Relief from Bankruptcy Stay (#155) regarding the
Motion to Amend Complaint(#126).

## II. Motion to Amend Complaint (#126)

Carstarphen seeks to file a second amended complaint that adds
certain factual allegations in support of his second claim for
breach of fiduciary duty and self-dealing.  The proposed amendments
to the operative first amended complaint (#4) concern acts by
Defendant that occurred in 2005, 2006, 2008, and 2009.  (See Mot. to
Amend Compl. at 14 (#126).)  Federal Rule of Civil Procedure
15(a)(2) provides that a party "may amend its pleading only with the
opposing party's written consent or the court's leave.  The court
should freely give leave when justice so requires."

One factor to consider is whether granting the Motion to Amend
Complaint (#126) would unduly prejudice Milsner.  Jackson, 902 F.2d
at 1387.  Milsner argues that this case has already been delayed due
to Carstarphen's dilatory tactics, and that Carstarphen gave no
indication of a desire to amend the complaint until after discovery
was virtually concluded, depositions taken, and considerable effort
put forth into preparing a motion for summary judgment.  While
discovery may be reopened, we find that Carstarphen's last-minute
motion to amend, containing very few additional allegations, most or
all of which could have been brought earlier or are redundant of the
allegations in the current complaint, serves mostly to prolong this
litigation rather than to add substance to it.

Carstarphen filed his Motion to Amend Complaint (#126) on June
17, 2010.  After numerous extensions, the discovery cut-off date was

5

extended until June 25, 2010.  The deadline for filing dispositive
motions was July 3, 2010.  This Motion to Amend Complaint (#126) was
filed on the verge of this action approaching resolution or
progress.  One factor in a decision regarding a motion for leave to
amend is undue delay in filing the motion.  <u>Jackson v. Bank of
Hawaii</u>, 902 F.2d 1385, 1388 (9th Cir. 1990).  "Relevant to
evaluating the delay issue is whether the moving party knew or
should have known the facts and theories raised by the amendment in
the original pleading."  <u>Id.</u>  Many of the new allegations
Carstarphen seeks to add were known or should have been known to
Carstarphen when he filed his original complaint (#1) and then the
operative first amended complaint (#4) in 2007.  For example,
Carstarphen wishes to amend his complaint to add allegations about
certain payments made by AMF to Milsner, allegedly for previously-
guaranteed debt, made at least in November 2005, December 2006, and
December 2009.  These payments were noted on AMF's financial
statements, and the statement for 2005 was produced by Carstarphen's
attorney in the prior state court case in July 2007.  (Opp'n. to
Mot. to Amend Compl. at 4 (#133).)  This action was not filed until
November 13, 2007.  Therefore, we feel that Carstarphen has unduly
delayed amending his claims to include those allegations.

The allegations concerning events that occurred after November
2007 were also known or should have been known, or are redundant of
allegations contained in the first amended complaint (#4).
Carstarphen alleges that Milsner entered into five year leases on
behalf of AMF in September and October 2008, requiring AMF to lease
RFS airplanes "at a rental rate of 20% above what Reno Flying

6

Service must pay back the bank."   (Mot. to Amend Compl. at 14 (#126).)   This allegation appears to be included in the First Amended Complaint (#4), and therefore amendment of the complaint is unnecessary.   Carstarphen's allegation regarding the $100,000 check Milsner wrote to himself is not specifically included in the First Amended Complaint (#4), but Carstarphen's undue delay in amending the complaint is a factor that gravitates against granting the Motion to Amend Complaint (#126). While we acknowledge that in some cases, relevant issues may only become apparent at the end of discovery, we find that the proposed changes were known to Carstarphen long before he filed his Motion to Amend (#126). Furthermore, we are not convinced that amendment is necessary here. Carstarphen is not bringing new claims, he is merely seeking to add allegations that support his existing claims of breach of fiduciary duty and self-dealing.   We take no position on Carstarphen's concern that his damages will be "cut-off" as of the date of his operative complaint if he is not allowed to amend.   The issue of whether certain events that support Carstarphen's claim for breach of fiduciary duty and self-dealing should be presented at trial and included in the damages has not been argued to the Court and will not be decided at this time.   We do note, however, that it appears there is no support for the suggestion that damages must be strictly cut off as of the date of the filing of the complaint.   See, e.g., Int'l Bhd. of Elec. Workers v. A-1 Elect. Serv. Inc., 535 F.2d 1, 3-4 (10th Cir. 1976).   Based on the foregoing reasons, we deny Carstarphen's Motion to Amend Complaint (#126).

7

### III. Summary Judgment Standard

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists.  N.W. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  FED. R. CIV. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Although the parties may submit evidence in an inadmissible form — namely, depositions, admissions, interrogatory answers, and affidavits — only evidence which might be admissible at trial may be considered

1 by a trial court in ruling on a motion for summary judgment.  FED.

2 R. CIV. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d

3 1179, 1181 (9th Cir. 1988).

4       In deciding whether to grant summary judgment, a court must

5 take three necessary steps: (1) it must determine whether a fact is

6 material; (2) it must determine whether there exists a genuine issue

7 for the trier of fact, as determined by the documents submitted to

8 the court; and (3) it must consider that evidence in light of the

9 appropriate standard of proof.  Anderson, 477 U.S. at 248.  Summary

10 judgment is not proper if material factual issues exist for trial.

11 B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir.

12 1999).  "As to materiality, only disputes over facts that might

13 affect the outcome of the suit under the governing law will properly

14 preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

15 Disputes over irrelevant or unnecessary facts should not be

16 considered.  Id.  Where there is a complete failure of proof on an

17 essential element of the nonmoving party's case, all other facts

18 become immaterial, and the moving party is entitled to judgment as a

19 matter of law.  Celotex, 477 U.S. at 323.  Summary judgment is not a

20 disfavored procedural shortcut, but rather an integral part of the

21 federal rules as a whole.  Id.

22

23    **IV. Motion for Summary Judgment on the Counterclaims (#128)**

24       Carstarphen argues that there are no disputed facts with

25 regards to Milsner's counterclaims.  Milsner brought six

26 counterclaims: (1) intentional interference with contractual

27 relations, (2) breach of fiduciary duty, (3) intentional

28                                    9

interference with prospective economic advantage, (4) breach of
covenant of good faith and fair dealing, (5) negligence, and (6)
attorney's fees.  Carstarphen asserts that the basis for all six
counterclaims is simply a claim for abuse of process, and because
Milsner cannot, according to Carstarphen, make a valid claim of
abuse of process, all of the counterclaims must be adjudicated in
favor of Carstarphen.

     The elements of a claim for abuse of process are: "(1) an
ulterior purpose by the defendants other than resolving a legal
dispute, and (2) a willful act in the use of the legal process not
proper in the regular conduct of the proceeding." Posadas v. City
of Reno, 851 P.2d 438, 457 (Nev. 1993) (quoting Kovacs v. Acosta,
787 P.2d 368, 369 (Nev. 1990)).  We agree that a claim for abuse of
process in Nevada cannot be based solely on the filing of a
complaint.  See, e.g., Childs v. Selznick, Nos 49342, 51919, 2009 WL
3189335 at *2 (Nev. 2009) (citing Laxalt v. McClatchy, 622 F. Supp.
737, 752 (D. Nev. 1985)).  Milsner asserts that his counterclaims
are not based solely on the filing of a complaint.  We decline to
address whether Milsner's counterclaims fit the requirements of a
claim for abuse of process, because Milsner did not bring an abuse
of process claim.

     Milsner has failed to carry his burden concerning his
counterclaims.  Milsner concedes that "[t]he core bad acts are
abusive abuse of process" and then summarily states that "but the
other legal theories are supported factually and legally, and
Carstarphen has not proven otherwise."  (Opp'n. to Pl's Mot. for
Summ. J. at 13 (#138).)  Milsner responds to Carstarphen's arguments

10

regarding abuse of process, and argues that there could be a claim
for abuse of process, but does not show any factual or legal support
for his actual counterclaims, none of which are for abuse of
process.

While Carstarphen did not address each claim specifically,
Carstarphen's argument is that all of Milsner's counterclaims are
simply one claim for abuse of process.  In light of Milsner's
concession that the core bad acts amount to abuse of process, we
believe that it is Milsner's burden to show that there are material
issues of fact with respect to his counterclaims for intentional
interference with contractual relations, breach of fiduciary duty,
etc.  Milsner has failed to do so, and we will grant Carstarphen's
motion for summary judgment (#128) on the counterclaims.


## V. Milsner's Motion for Summary Judgment (#131)

Carstarphen's claims are both titled "Breach of Fiduciary Duty
and Self-Dealing."  (Am. Compl. (#4).)  The first cause of action
addresses the sale of stock to the AMF ESOP.  The second cause of
action concerns certain business dealings with RFS.  Milsner asserts
that laches, estoppel, and the business judgment rule bar
Carstarphen's claims, and that Carstarphen has failed to show
causation or damages.

### A. Sale of Stock to the AMF ESOP

Carstarphen's first claim for breach of fiduciary duty and
self-dealing is based on Milsner's sale of stock to the AMF ESOP.
In December 2005, Milsner sold 1,600 shares to the AMF ESOP for
$2,310 per share.  Milsner was paid part of the price in cash, and

11

was provided a promissory note for the balance of the purchase price.  AMF guaranteed payment of annual contributions to the AMF ESOP, which caused a $3,400,000 liability on the financial statements of AMF.  Carstarphen argues that this set of events devalued AMF to a market value of less than $1,000,000, and devalued his shares from a market value of $2,310 per share to approximately $400 per share, a loss of over $1,500,000.  Milsner responds that his sale of stock to the AMF ESOP created a contingent liability for AMF, but did not harm the "going concern" value of AMF.  In support of his position, Milsner submitted an expert report.  (Zachow Rep. Ex. 27 (#132-2).)

Carstarphen submitted a report prepared by James S. Proctor ("Proctor") and Heather M. Tryon ("Tryon") in support of his claim that Milsner's sale of stock to the AMF ESOP devalued the company and the value of Plaintiff's shares.  (Proctor Rep. Ex. 32 (#140-4).)  According to Proctor and Tryon, the AMF ESOP is a highly-leveraged ESOP.  The purchase of Defendant's stock, valued at $3,696,000, was funded with a note in the amount of $3,333,356, making the ESOP 91% leveraged.  Proctor and Tryon provide that a cash flow cushion of 20 percent to 50 percent over total annual debt service requirements is typical for an ESOP.  Proctor and Tryon conclude that Milsner's sale of stock depressed the value of the stock, including that of Carstarphen, and put an unsustainable cash flow strain on AMF.  They predict that AMF will default on its annual payments, and Milsner will regain a controlling interest in AMF.  They estimate damages to AMF in the amount of $5,197,469, and

damages to Carstarphen in the amount of $1,732,490.   (Proctor Rep.
Ex. 32 at 78 (#140-4).)

Milsner argues that Proctor's opinions are not admissible and
his conclusions do not qualify as an admissible expert opinion.
(Reply at 7 (#151).)   Milsner's expert, Zachow, questioned Proctor's
methodology and conclusions.   (Zachow Rep. Ex. 27 (#132-2).)
Proctor and Tryon acknowledge Zachow's report, but assert that
Zachow's results are merely differences of opinion, and that
Zachow's report does not change their conclusions.   Proctor and
Tryon are both certified public accountants, certified fraud
examiners, and certified valuation analysts, each with nearly two
decades or more of experience in their fields of business consulting
and accounting.   After examining the reports prepared by Proctor and
Tryon, we decline to exclude Proctor and Tryon's report as
unreliable, and take their analysis into account.   Because
Carstarphen has provided some evidence that he has suffered damages,
we reject Milsner's argument that Carstarphen has not presented
evidence of damages.

We also reject Milsner's arguments that the business judgment
rule protects his sale of stock to the AMF ESOP.   Because it is
undisputed that Milsner is an interested director for the purposes
of that transaction, and because Carstarphen has provided some
evidence that there was no vote by disinterested directors, Milsner
is unable to seek the deference that the business judgment rule
affords.   Milsner has not presented enough evidence that the
transaction was fair to AMF at the time it was authorized or
approved, and Carstarphen has presented some evidence that it was

13

1   not, taking into account the amount of debt AMF took on in order to
2   facilitate the transaction.  Viewing the evidence in the light most
3   favorable to Carstarphen, we find that there is a genuine issue of
4   material fact regarding whether Milsner's actions involving the AMF
5   ESOP constituted breach of his fiduciary duties.

6        Nor do we agree with Milsner's argument that Carstarphen should
7   be estopped from challenging Defendant's sale of stock to the AMF
8   ESOP because he voted in favor of the sale.  Carstarphen admits that
9   he voted in favor of the adoption of the ESOP, but states that the
10  stockholders never voted on the issue of the sale of Milsner's stock
11  to the ESOP.  Instead, Milsner and Dawson approved the sale of
12  Milsner's stock to the ESOP after the stockholder meeting.  We also
13  reject Milsner's argument that laches bars Carstarphen's claims.  We
14  see no evidence of the type of undue delay that would support a
15  finding of laches.

16       In addition to his claims of devaluation, Carstarphen states
17  that Milsner breached his fiduciary duties by conditioning
18  Carstarphen's sale of stock to the AMF ESOP on Carstarphen dropping
19  the state court action against Milsner and Dawson. Carstarphen did
20  not dismiss the litigation or participate in selling stock to the
21  AMF ESOP.  Milsner provides evidence that the condition actually
22  applied to Milsner guaranteeing a loan to provide Carstarphen with
23  cash upon his sale of the stock.  (Ex. 8 at 17-19 (#131-2).)  The
24  other option would have been for Carstarphen to sell his stock on
25  the same terms as Milsner, that is, with only part of the payment in
26  cash and a promissory note for the remainder.  Carstarphen, on the
27  other hand, has provided evidence that the condition in fact applied

28                              14

to his sale of stock to the AMF ESOP.  (Ex. 10 at 157-58 (#140-2).)
We decline to grant summary judgment because there is a genuine
issue of material fact regarding whether the condition was imposed
on Carstarphen's sale of stock to the AMF ESOP.

**B. Business Dealings with RFS**

Carstarphen's second claim for breach of fiduciary duty and
self-dealing concerns a monthly consulting fee of $5,000 paid by AMF
to RFS, the refusal to hire in-house maintenance personnel to
service and repair AMF's airplanes and instead choosing to utilize
RFS, and the decision to lease airplanes from RFS rather than
purchasing a new airplane.

With respect to the monthly consulting fee, Milsner argues that
Carstarphen should be estopped from bringing the claim because
Carstarphen approved the consulting fee and also signed at least
three checks facilitating this repayment.  (Def.'s Mot. for Summ. J.
at 37 (#131); Ex. 20 (#132-1); Ex. 25 (#132-1).)  Milsner also
argues that the monthly consulting fee was a proper payment made to
repay RFS's historical subsidies of AMF.  (Id.)  Carstarphen denies
that the consulting fee was approved by the Board of Directors or
shareholders, but does not provide any evidence to support that
assertion.  (Pl.'s Opp'n. at 17 (#140).)  The minutes of the
shareholder meetings do not specifically discuss the monthly
consulting fee, however, the minutes provide that "[t]he Treasurer
of the corporation presented an oral report of the financial
condition for the year ended December 31, [1999, 2000, 2001, 2002].
No shareholder objections were raised."  (Ex. 20 (#132-1).)
Carstarphen signed each of the minutes, as well as the checks issued

15

in 1998.  We agree that Carstarphen should not be allowed to
challenge the validity of transactions he voted in favor of, and
therefore, the monthly consulting fee cannot serve as the basis of
Carstarphen's claim for breach of fiduciary duty and self-dealing.

Milsner argues that Carstarphen also supported the decision to
lease airplanes from RFS rather than purchasing them.  (Def's Mot.
for Summ. J. at 44 (#131).)  Carstarphen testified at a deposition
that the only course AMF had available to it was for RFS to purchase
the aircraft to lease to AMF, because AMF was denied financing due
to the pending state court action.  (Ex. 1 at 133-34 (#131-1).)
Carstarphen also testified that he made no objections to the lease
agreement.  (Id. at 135.)

Carstarphen's experts, Proctor and Tryon, prepared a report
stating that if AMF had purchased an additional aircraft instead of
renting such from RFS, "it would have had an additional projected
cash flow of approximately $1,037,742" for the period 2005 through
2012.  (Proctor Rep. Ex. 32 at 5 (#140-4).)  However, because
Carstarphen has testified that AMF was unable to receive financing
for the purchase of new aircraft and leasing from RFS was the only
available course, the airplane leases are also insufficient to
support a claim for breach of fiduciary duty and self-dealing.

Finally, Milsner argues that Carstarphen's allegation
concerning airplane maintenance fails because maintenance and repair
were never part of AMF's business plan, and the transactions were
fair as to AMF.  (Def.'s Mot. for Summ. J. at 46, 49 (#131).)  Under
Nev. Rev. Stat. 78.140, transactions are not void or voidable if
they were fair as to the corporation at the time they were

1 authorized or approved.  Carstarphen's experts state that had AMF
2 employed two mechanics instead of paying RFS for repairs and
3 maintenance it would have saved approximately $1.2 million for 2005
4 through 2009.  (Proctor Rep. Ex. 32 at 6 (#140-4).)  While Milsner
5 argues that the fees paid to RFS were fair, he does not present
6 evidence to support this conclusion.  Proctor and Tryon, on the
7 other hand, compare the fees paid to RFS with the fees that would
8 have been paid to two FAA licensed mechanics.  Because Milsner has
9 not provided evidence from which we could find that the fees paid to
10 RFS were fair, or that Carstarphen should be estopped because he
11 voted in favor of the decision to use RFS's airplane maintenance
12 personnel, we decline to grant summary judgment on Carstarphen's
13 second claim for breach of fiduciary duty and self-dealing because
14 there remains a genuine issue of material fact regarding the
15 decision to use RFS's airplane maintenance personnel.

16
17                            **VI. Conclusion**

18      Carstarphen's Motion for Leave to Amend (#126) shall be denied
19 because Carstarphen unduly delayed amending the complaint, and
20 because Carstarphen seeks to add specific instances of self-dealing
21 to the complaint, rather than to add new claims or new parties.  To
22 the extent that such allegations support Carstarphen's existing
23 claims for breach of fiduciary duty and self-dealing, amendment of
24 the complaint is not necessary to allow Carstarphen to present such
25 evidence in this case.

26
27
28                                    17

1    Carstarphen's Motion for Summary Judgment on the Counterclaims
2  (#128) shall be granted because Milsner has not shown any genuine
3  issues of material fact with respect to the counterclaims.

4    Milsner's Motion for Summary Judgment (#131) shall be denied.
5  Carstarphen has presented sufficient evidence that genuine issues of
6  material fact remain on his claims for breach of fiduciary duty and
7  self-dealing based on Milsner's sale of stock to the AMF ESOP and
8  the decision to use RFS's airplane maintenance personnel.

9

10    **IT IS, THEREFORE, HEREBY ORDERED** that Carstarphen's Motion for
11  Leave to Amend (#126) is **DENIED**.

12

13    **IT IS FURTHER ORDERED** that Carstarphen's Motion for Summary
14  Judgment on the Counterclaims (#128) is **GRANTED**.

15

16    **IT IS FURTHER ORDERED** that Milsner's Motion for Summary
17  Judgment (#131) is **DENIED**.

18

19

20  DATED: October 14, 2011.

21                                    _Edward C. Reed._

22                                    UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28
                                    18